Arthur Wachtel, J.
The complaint in this case states that this is an action for “ 320.00, being the balance due to plaintiff under employment agreement whereby defendant would be entitled to receive fifty percent of all profits from the sale of cars purchased by him with money supplied by plaintiff and would sustain and pay fifty percent of all losses from the sale of said cars purchased by him with defendant’s money, said above sum accruing as a loss during the period of August 1 to September 15, 1956.”
The court has carefully reviewed the record in this case. The testimony of Richard A. Raffo, vice-president of the plaintiff corporation, and the testimony of the defendant are in sharp conflict. Mr. Raffo testified that the plaintiff hired the defendant as a buyer of used cars. Plaintiff’s funds were to be used to purchase used cars by the defendant and “ he would share equally in profits and also the losses ” with the plaintiff, 50% of the profits and 50% of the losses; that the defendant bought cars from the middle of July until September 1; that the plaintiff kept an account of all the cars purchased by the defendant in accordance with their agreement; that the defendant was given credit for one half the profits upon the cars purchased by him and debited with one half the losses resulting from the *968 cars purchased by him. There was no specific period of time for the duration of the employment; that after September 1 the defendant left the plaintiff, leaving cars on hand which he had purchased. Mr. Raffo further testified that “ he (the defendant) wasn’t sending in any cars to reconcile the losses so we sold the cars after a period of one month to six weeks.” As a result, plaintiff contended that it sustained a loss totalling $642 and seeks a judgment for one half that amount.
The defendant testified that he was hired as an employee, not on the basis as testified by the plaintiff’s officer but that he was hired as a used car buyer in accordance with the ‘ ‘ usual deal. ’ ’ It was the defendant’s testimony that the “ usual deal” in the used car industry is that a used car buyer is hired to purchase cars on behalf of the dealer upon the basis of ' ‘ commissions ” which were based upon “ the amount of money my cars earned each week based on a net basis — whatever cars may have taken some losses during the week were deducted from the cars that made earnings during the week and the net figures was where I received my commissions;” that the only difference in the arrangement made in the industry was on the basis of a “ house charge,” namely, the expense charge set by the dealer for ‘' transportation, general overhead, gross receipts tax, etc.” and in this case, the understanding was that the ‘ ‘ house charge ’ ’ would be $10 per car. The defendant denied there was any arrangement whereby he was to account to the plaintiff for any net loss resulting from the purchase and sale transactions and it was his understanding that he, as a used car buyer, would receive compensation on a weekly basis to be determined upon a computation of one half the profits made on the cars against which were to be deducted one half the losses.
If the testimony of the plaintiff is to be believed, the defendant was subject to an employment agreement whereby his earnings were highly speculative and the profits applicable to his earnings subject to arbitrary resale prices in group purchase deals and also, as evidenced in one case, delayed resale where the value of the car was clearly affected. In addition to such determination of the defendant’s compensation, the plaintiff contends that he was subject to the plaintiff for an accounting for one half of the losses sustained by the plaintiff as a result of the resale of cars purchased by the defendant and remaining in the possession of the plaintiff after the defendant abandoned his employment. This was the subject of a direct and vigorous conflict in the testimony. It appears that a fair inference from *969 the plaintiff’s testimony would be that the actual relationship of the parties was that of a joint venture rather than of employer and employee.
In any event, the plaintiff has the burden of proof. The court is of the opinion that the plaintiff has failed to sustain its burden of proof, to prove the employment agreement and the damages alleged, by a fair preponderance of all the credible evidence.
Complaint dismissed.